**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY (CAMDEN)**

| | | |
|---|---|---|
| **KEVIN GILL** | : | |
| | : | Civil Action |
| Plaintiff | : | |
| | : | |
| v. | : | No. _____ |
| | : | |
| **GAME CHANGER WRESTLING, LLC** | : | |
| 1201 Orange St. Suite 600 | : | |
| One Commerce Center | : | |
| Wilmington, DE 19801 | : | |
| | : | |
| and | : | |
| | : | |
| **BRETT HOFFMAN** | : | |
| 79 Brooks Road | : | |
| Moorestown, NJ 08057 | : | |
| | : | |
| Defendants | : | |
| | : | |

## COMPLAINT

**AND NOW**, Comes, Plaintiff Kevin Gill ("Mr. Gill" or "Plaintiff") by and through his undersigned counsel, Kaminsky Law, LLC, and hereby avers as follows in his Complaint against Defendants Game Changer Wrestling, LLC ("GCW") and Brett Hoffman ("Mr. Hoffman") (collectively "Defendants"):

### I.    SUMMARY

1.    This dispute arises from Defendants' attempt to unfairly and unlawfully exclude Plaintiff from a joint venture and revenue stream that he helped start and grow, in violation of the Defendants' promises to Plaintiff to share in the revenue that the venture generated.

2.    Despite Defendants' conduct, the venture continues to maintain subscribers—who pay monthly for access to the venture, which includes past content developed by Plaintiff, utilizes Plaintiff's likeness, and from which Plaintiff was promised and continues to be owed a percentage.

1

3.    Plaintiff now seeks that this Court declare that he is the rightful owner of 20% of the venture, that he is owed payments in accordance with the parties' agreement dating back to January 2021, that he is entitled to an accounting on the revenue generated from the venture (and the proceeds therefrom), and that the Defendants cannot exclude Plaintiff from the venture without paying him fair market value of the same.

## II.    THE PARTIES

4.    Plaintiff Kevin Gill ("Mr. Gill") is an adult individual who is a resident of New York. As this is a public filing and Mr. Gill is arguably a public figure, especially within the wrestling community, his address is withheld from this filing. Further, since attempting to collect on the amount owed from GCW, Mr. Gill has received threats from those associated with Defendants. However, Mr. Gill can be contacted through his counsel and will readily provide his address to the Court should it be required.

5.    Defendant Game Changer Wrestling, LLC ("GCW") is a Delaware Limited Liability Company with a registered agent who may be served at Agents and Corporations, Inc. 1201 Orange St. Ste 600, One Commerce Center, Wilmington, DE 19801.

6.    Defendant Brett Hoffman ("Mr. Hoffman") is an adult individual who, upon information and belief, resides and may be served at 79 Brooks Road, Moorestown, NJ 08057.

7.    Upon information and belief, Mr. Hoffman is the sole owner of GCW.

## III.    JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1332, as complete diversity of citizenship exists and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.    This Court has personal jurisdiction over the Defendants in accordance with New Jersey's long-arm statute, N.J.S.A. 2A:4-30.68, as Defendants transacted business in this state,

regularly operate within the state, hold themselves out as being based in this state, and caused harm in this state.

10.    Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2), in that a substantial part of the events or omissions giving rise to the claims herein occurred in this District, the parties entered into an agreement and did business in this District, and Mr. Hoffman, who upon information and belief is the owner of GCW, is located in this District. Further, this district is the most convenient forum to resolve the parties' dispute.

## IV.    FACTS RELATED TO ALL COUNTS

11.    Mr. Gill is a veteran and established professional wrestling match organizer and announcer who is well known in the professional wrestling community.

12.    GCW is a professional wrestling company, that is well known in the professional wrestling industry, where it runs over seventy events per year, sells merchandise, and streams the events publicly via, Triller TV ("Triller"), a digital video streaming service.

13.    Upon information and belief, GCW is under an exclusive contract with Triller and deliver live streamed wrestling events from around the country and occasionally internationally.[1]

14.    Since 2017, Mr. Gill performed as an announcer for GCW.

15.    In or about March of 2020, GCW's revenue and business was unexpectedly halted when New Jersey issued stay at home decrees during the COVID pandemic and the organization was forced to shut down and cancel all its performances.

16.    In an effort to generate revenue, Mr. Gill came up with the idea to start a Patreon to help fund GCW which would include creating podcasts and other content for the different tiers of supporters to keep fans engaged with GCW and its wrestlers (the "Patreon").

---

[1] GCW's Triller page can be accessed at https://www.trillertv.com/channel/game-changer-wrestling/

17.    After discussions between Mr. Hoffman and Mr. Gill, they agreed that Mr. Gill would create, run, and maintain the Patreon as well as create and host podcasts with Mr. Hoffman. In exchange, Mr. Hoffman, on behalf of GCW, agreed to pay Mr. Gill twenty percent (20%) of the monthly revenue the Patreon generated (the "Agreement"). *See* Text messages between Mr. Gill and Mr. Hoffman attached hereto as **Exhibit A**.

18.    The Patreon was announced to the public on May 20, 2020, and launched on May 22, 2020.

19.    Although Mr. Gill came up with the idea, when the Patreon was created, Mr. Hoffman linked it exclusively to his personal bank account and oversaw all withdrawals and transfers.

20.    Upon information and belief, Mr. Hoffman comingled GCW assets with his own, comingled the Patreon funds with GCW funds, utilized the Patreon funds in furtherance of GCW's business without repaying the same, and used GCW assets for his personal expenses. Such conduct permits piercing the corporate veil of GCW.

21.    As the Patreon started and grew, GCW paid Mr. Gill his monthly percentage as planned and without issue.

22.    These amounts were small at first, however, due largely to Mr. Gill's hard work and efforts in promoting and maintaining the Patreon, it became very successful, and this his payout greatly increased.

23.    In fact, within three months, by July 2020, Mr. Gill was receiving approximately $1,000, per month from the Patreon, and it grew substantially over the course of just a few months, whereby Mr. Gill's portion was supposed to be between $2000 and $3000 per month.

24.    As popularity grew and Mr. Gill's payout increased, GCW, by and through Mr. Hoffman, slowly started to delay Mr. Gill's payments until in or about September of 2020 when

payments ceased completely.

25.     While this happened, the Patreon had grown to generating between $10,000-$15,000 in revenue per month—not including tickets or merchandise sold via Patreon.

26.     At the time, Mr. Hoffman, who at all times acted on behalf of GCW, cited financial difficulties due to COVID delays and the capital needed to ramp up GCW's profitability as the reasons for non-payment.

27.     Mr. Gill understood this explanation and—at the promise of payment as soon as possible—continued to work on the Patreon creating new content and podcasts for subscribers.

28.     In fact, Mr. Gill even agreed to hold off on seeking payment on some of the monthly invoices so that Mr. Hoffman could put the extra money back into GCW to help it grow, thereby putting the business first and showing that he was invested in the long-term success of the Patreon.

29.     Notably, GCW utilized the Patreon to generate additional merchandise sales—and continues to do so—as "Patreon Exclusives."[2]

30.     Mr. Gill also performed many duties outside of his original Patreon responsibilities in the interest of continuing to grow.

31.     Despite all his hardship excuses, Mr. Hoffman appeared to thrive during this time, purchasing a second home, a luxury SUV, and other luxury items that, upon information and belief, were purchased with GCW assets and/or Patreon funds.

32.     Importantly, even though Mr. Gill agreed to hold off on seeking those payments, Mr. Hoffman continued to promise Mr. Gill that he would satisfy all outstanding invoices and continue to pay Mr. Gill the agreed upon percentage.

33.     In or about September 9, 2022, Mr. Gill sent an invoice to Mr. Hoffman for

---

[2] GCW merchandise website and "Patreon Exclusives" category can be accessed at
https://gcwmerch.com/collections/patreon-exclusives

reimbursement of expenses related to the business along with invoices requesting payment for his percentage from September 2020 to December 2020.

34.     Mr. Hoffman promised to pay but insisted on a phone call first and although Mr. Gilla readily agreed, for ***months*** Mr. Hoffman continued to push back and reschedule that call. *See* Email Correspondence attached hereto as **Exhibit B**.

35.     Despite Mr. Hoffman avoiding Mr. Gill, Mr. Gill continued to work without compensation until on or about October 13, 2022, when he went to log into the Patreon's account and found that his access was revoked.

36.     Shortly thereafter and without any warning or explanation, GCW terminated Mr. Gill effective immediately.

37.     At all times material hereto, Mr. Gill was ready, willing, and able to continue to perform his obligations for the Patreon and in furtherance of the Agreement but has been blocked from doing the same by GCW and Mr. Hoffman.

38.     Importantly, at no time before GCW terminated Mr. Gill did Mr. Hoffman express any dissatisfaction with Mr. Gill's work and/or performance.

39.     While Mr. Gill was shocked and saddened by the sudden termination, he left quietly and simply requested that GCW pay him for his share of the income due from the Patreon.

40.     Mr. Hoffman agreed to pay Mr. Gill a small partial payment for the remainder of 2020, while the remaining balance was determined, and on or about November 10, 2022, paid Mr. Gill Three Thousand Nine Hundred Seventy-Five Dollars and Sixty-Three Cents ($3,975.63).

41.     After this payment, Mr. Hoffman contacted Mr. Gill and offered an offensively low sum in order to resolve the remaining amounts Mr. Gill was due from the Patreon.

42.     As this amount was less than a third of what was owed, Mr. Gill rejected the settlement and demanded an amount closer to the amount he believed he was owed for his hard

work and efforts throughout 2021 and 2022.

43.    At the time of the 2022 discussions, Mr. Gill did not have access to the Patreon's finances, and it was impossible to determine the exact about that is owed, however, Mr. Gill used the number of subscribers and the tier prices to come up with what he believed to be a reasonable amount.

44.    Mr. Hoffman's proposal also failed to place any value on the fact that the parties' Agreement contemplated that Mr. Gill would continue to receive 20% of the Patreon as he was a founding member and sought that Mr. Gill relinquish the same without any consideration whatsoever.

45.    After receiving Mr. Gill's response, GCW and Mr. Hoffman ceased all communications and Mr. Gill had no choice but to seek legal representation.

46.    Further, despite locking Mr. Gill out of the Patreon, GCW and Mr. Hoffman have continued the venture, repeatedly referenced Mr. Gill on the podcast, continue to use Mr. Gill's likeness and grant subscribers' access to content that was developed by and features Mr. Gill, but have failed to make any further payments or provide an accounting of the revenue generated from the Patreon.

47.    On or about December 14, 2023 and January 19, 2024, Mr. Gill's previous counsel sent Defendants two letters seeking to resolve the matter amicably.

48.    GCW did not respond, forcing Mr. Gill to file the instant lawsuit.[3]

49.    As of the filing of this Complaint, the Patreon has six hundred and sixty-seven (667) members, with memberships that provide access to exclusive content ranging from $6.66 per month to $75.00 per month.[4]

---

[3] For the avoidance of doubt, those offers to settle are hereby withdrawn.
[4] GCW's Patreon page can be accessed at https://www.patreon.com/gamechangerwrestling

50.     Accordingly, based on the same, it is estimated that the Patreon generates between $4,448.89 and $50,025 per month in revenue—of which 20% is due to Mr. Gill.

**Defendants used Plaintiffs' Funds for GCW**

51.     At all times material hereto, it is believed and therefore averred that Defendants utilized the revenue generated from the Patreon—including Plaintiff's twenty percent (20%)—to pay for GCW's expenses, especially while GCW was not generating revenue due to COVID closures.

52.     By way of limited example only, Defendants used the money rightfully belonging to Plaintiff to continue to grow GCW including purchasing merchandise, increasing the price, and selling it on the Patreon. On the Patreon, Mr. Hoffman also sold access to exclusive, first, and pre-sell tickets to wrestling events.

53.     Accordingly, Plaintiff believes that an accounting of the disposition of funds generated from the Patreon, together with the profits made thereon, is reasonable and appropriate so that Plaintiff may recover 20% of the proceeds generated by GCW from those funds.

**Defamatory Conduct / Trading on Mr. Gill's Name**

54.     Despite terminating Mr. Gill, GCW continued to use his name on its website as a way to entice more subscribers. *See* Screenshot and metadata attached hereto as **Exhibit C**.

55.     In fact, GCW left Mr. Gill's name on its website for over 8 months after it terminated Mr. Gill and continued to reference Mr. Gill on its podcast, indicating that Mr. Gill had signed a contract with GCW.

56.     Moreover, Defendants continue to provide access to and generate revenue from content developed by Mr. Gill and that features Mr. Gill as part of the subscription and exclusive access for which Patreon subscribers pay.

57.     Additionally, on or about October 20, 2022, Mr. Hoffman tweeted out, to his more

than 24,000 followers, that Mr. Gill was under contract with GCW—despite locking him out of the Patreon more than a week before the post.[5] *See* Article and Tweet attached hereto as **Exhibit D**.

58.     The tweet was knowingly false and publicized with the specific intent of preventing Mr. Gill from being able to find other work because, in the wrestling community, it is well known that companies will not hire or attempt to hire performers who are under contract due to previous lawsuits regarding interference with contracts.

59.     Further, upon information and belief, the tweet was intended to promote the Patreon to generate additional revenue from Mr. Gill's likeness—without any intent to share the same with Mr. Gill.

60.     Bodyslam.net, a wrestling media website, picked up the tweet and wrote an article about the contract extension.[6] *See* Ex. D.GCW's comments, Mr. Hoffman's tweet, and the subsequent article, were especially damaging to Mr. Gill's ability to find work.

61.     Further still, Mr. Hoffman, on behalf of GCW, announced on the podcast that Mr. Gill was terminated, with Mr. Hoffman making baseless and knowingly false claims that Mr. Gill was angry that GCW did not book him for Japan, despite Mr. Hoffman acquiring a Visa for Mr. Gill for the same trip.

62.     Mr. Hoffman also falsely stated that Mr. Gill was never booked for shows, he just "showed up" when in fact, Mr. Hoffman regularly booked Mr. Gill hotel accommodations for these events and Mr. Gill worked multiple roles for these events.

63.     Such statements were completely and knowingly false and harmful to Mr. Gill's

---

[5] This tweet is from Mr. Hoffman's stage name account, "Brett Lauderdale".
[6] Both the article and the tweet are still publicly available online at: https://www.bodyslam.net/2022/10/21/gcw-commentator-kevin-gill-signs-extension-with-promotion/                    and https://x.com/Lauderdale11/status/1583286801065971713.

reputation and ability to find work in the professional wrestling industry.

64.     On May 3, 2024, a wrestler on a GCW broadcast identified himself as the general manager of GCW and stated his first order of business would be to "fire Kevin Gill"—even though Mr. Gill had been excluded from the Patreon and GCW since 2022.

65.     GCW engaged in a pattern of disparaging Mr. Gill after his termination in an attempt to make it harder for him to find work in the industry and in retaliation for his refusal to accept pennies on the dollar for his 20% ownership in the Patreon.

## Damages

66.     As a result of Defendants' conduct, Plaintiff has been and continues to be harmed.

67.     Specifically, Plaintiff is owed over twenty-two months of agreed upon payments arising directly from his role in the Patreon, especially while he continued to contribute to the Patreon.

68.     During this time, Mr. Gill delivered over 60 hours of final podcast product over at least 45 episodes and that does not include all the extra work Mr. Gill did promoting and editing the podcasts.  Similarly, it does not include the time Mr. Gill spent on other tasks for GCW.

69.     Moreover, due to Mr. Hoffman's increasing lack of participation in the Patreon, Mr. Gill was forced to incur additional expenses in furtherance of the business which GCW still has not reimbursed.

70.     By way of limited example, Mr. Gill is owed Two Hundred Ninety-Nine Dollars and Eighty Cents ($299.80) for the Zoom subscription GCW used to record podcasts for 22 months.

71.     It is expected that these expenses will continue as Mr. Gill continues to collect receipts and records.

72.     In fact, after GCW terminated Mr. Gill, it continued to use his name for many

months to promote the Patreon and gather additional subscribers—for which Mr. Gill received nothing. By way of limited example, the Patreon used Mr. Gill's name on its webpage and its marketing materials were viewable by the public until at least June 5, 2023. For marketing materials in print, it was not until July of 2023 that GCW removed his name. As GCW benefited from Mr. Gill's name associated with the Patreon, he is also entitled to the percentage of the nine months GCW used Mr. Gill's name after his termination.

73.    Not only did GCW continue to use Mr. Gill's name, but current subscribers also get access to all prior content—including the prior recordings that include Mr. Gill.

74.    Accordingly, GCW's subscribers continue to get the benefit of Mr. Gill's content— for which he has not been compensated.

75.    Further, based on the parties' agreement, the work that Mr. Gill performed to get the Patreon to generate recurring revenue for GCW and Mr. Hoffman, and the fact that Mr. Gill was terminated without basis—solely for his conduct in seeking to obtain his rightful share of the same, Mr. Gill seeks a finding that he is the rightful and equitable owner of 20% of all of the revenue generated by the Patreon for as long as the Patreon exists and maintains subscribers.

76.    Although a full accounting is necessary, Mr. Gill believes he is owed well in excess of One Hundred Fifty Thousand Dollars ($150,000).  Further, Mr. Gill seeks declaratory relief to find that he is the rightful owner of 20% of the Patreon.

**COUNT I**
**BREACH OF CONTRACT**
**PLAINTIFF v. ALL DEFENDANTS**

77.    Plaintiff hereby incorporates by reference all paragraphs as though set forth fully at length herein.

78.    As set forth fully herein, Plaintiff entered into the Agreement with Mr. Hoffman both individual and on behalf of GCW as it relates to the work Plaintiff performed to start and

grow the Patreon and for GCW in exchange for his right to receive 20% of the revenue generated by the monthly subscribers to the Patreon.

79.     Pursuant to the Agreement, Defendants were required to pay Plaintiff 20% of the revenue that the Patreon generated.

80.     Plaintiff accepted the terms of the Agreement and, at all times material hereto, performed in accordance with the Agreement.

81.     Further, Defendants accepted the terms of the Agreement and performed in accordance with the Agreement.

82.     Further, at all times material hereto, Plaintiff was ready willing and able to perform his obligations under the Agreement absent being blocked from doing so by the Defendants.

83.     As a result, Plaintiff worked tirelessly to promote, maintain, and manage the Patreon—including creating content ideas, recording podcasts, and securing talent to interview on these podcasts.

84.     However, despite Plaintiff's work, Defendants breached their promise and failed to pay Plaintiff pursuant to the Agreement.

85.     Specifically, although GCW ceased paying Plaintiff on or about September 22, 2020, claiming it was due to COVID delays, GCW continued to promise Plaintiff payment and Plaintiff continued to work pursuant to that promise until October 13, 2022, when Plaintiff's access to the Patreon was abruptly revoked and GCW terminated him.

86.     After his termination, on or about November 10, 2022, Plaintiff accepted a small partial payment towards the amounts he was owed from September 2020 through December 2020—while the parties agreed to continue to negotiate the remainder of what Plaintiff was owed.

87.     The November 10, 2022 payment also acted to reiterate the terms of the parties' original agreement and toll Defendants' requirements pursuant thereto.

88.     As of the date of this filing, Defendants have refused to pay Plaintiff the remainder that is owed or to account for the revenue generated by the Patreon from January 1, 2021 to the present date.

89.     GCW's conduct amounts to a breach of the parties' Agreement.

90.     Additionally, New Jersey reads an implied covenant of good faith and fair dealing into agreements entered into in the commonwealth, requiring parties to act with honesty and in good faith in furtherance of the agreement.

91.     Defendants also breached the implied duty of good faith and fair dealing by the conduct described above.

92.     Defendants' conduct as detailed above has caused and continues to cause harm to Plaintiff as detailed herein.

93.     Defendants are and have been aware of the exact amount due to Plaintiff as 20% of the revenue generated from the Patreon and have baselessly withheld the same. Accordingly, an award of pre-judgment interest and post-judgment interest is warranted.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants in an amount exceeding $150,000.00, plus costs, expenses, pre-judgment interest, post-judgment interest, and any such other relief this Court deems equitable and just.

<u>**COUNT II**</u>
<u>*In the alternative* **BREACH OF IMPLIED CONTRACT**</u>
<u>**PLAINTIFF v. ALL DEFENDANTS**</u>

94.     Plaintiff hereby incorporates by reference all paragraphs as though set forth fully at length herein.

95.     As detailed herein, even absent a written agreement, the parties had a mutual understanding that GCW would pay Mr. Gill twenty percent (20%) of the Patreon's monthly revenue in exchange for Mr. Gill's starting and helping grow the Patreon, as detailed more fully

above.

96.    Plaintiff performed his promised obligations as required, even going above and beyond to ensure that the Patreon became successful—which it did.

97.    Further, at all times material hereto, Plaintiff was ready willing and able to continue to perform his obligations under the agreement absent being blocked from doing so by the Defendants.

98.    However, GCW did not uphold its end of the bargain, only paying Plaintiff for a few months and then ceasing payments citing excuses such as COVID delays and lack of funds once the Patreon became successful and the amount due to Plaintiff significantly increased.

99.    Although a subsequent payment of $3,975.63 was made on November 10th, 2022—for September 2020 through December 2020, no further payments have been made.

100.    To date, GCW has failed to compensate Plaintiff, as per the terms of their agreement for Plaintiff's services.

101.    Accordingly, GCW's failure to pay Plaintiff the agreed upon percentage is a breach of the implied agreement between the parties herein named.

102.    Defendants are and have been aware of the exact amount due to Plaintiff as 20% of the revenue generated from the Patreon and have baselessly withheld the same. Accordingly, an award of pre-judgment interest and post-judgment interest is warranted.

**WHEREFORE**, Plaintiff demands judgment in his favor and against GCW in an amount exceeding $150,000.00, plus costs, expenses, pre-judgment interest, post-judgment interest, and any such other relief this Court deems equitable and just.

### COUNT III
### *In the alternative* UNJUST ENRICHMENT
### PLAINTIFFS v. DEFENDANTS

103.    Plaintiff hereby incorporates by reference all paragraphs as though set forth fully at

length herein.

104.    By the conduct described herein, Defendants received the benefit of Plaintiff's hard work and efforts related to the Patreon as the podcast grew in popularity and subscribers continued to pay monthly for content—for which at least 667 continue to pay to this day.

105.    Defendants failed to adequately compensate Plaintiff for his hard work and efforts as agreed upon.

106.    In fact, Defendants failed to compensate Plaintiff, abruptly terminated him, and defamed him on the podcast that Plaintiff built and was a regular host.

107.    Additionally, as an owner of GCW, Mr. Hoffman received not only Mr. Gill's hard work, but retained Mr. Gill's percentage, which upon information and belief Mr. Hoffman kept in his personal account and used for personal expenses.

108.    Further, upon information and belief, the revenue generated by the Patreon—including the 20% that Plaintiff was owed—was used by Defendants in furtherance of growing, supporting, and generating profits from GCW.

109.    However, Plaintiff did not receive any benefit from his 20% of the Patreon revenue being used in furtherance of GCW's business or any portion of GCW's profits therefrom.

110.    Accordingly, Plaintiff's hard work and efforts generated revenue for both the Patreon and for GCW's business, for which Plaintiff was not compensated.

111.    Plaintiff sought that Defendants fairly compensate Plaintiff based on the agreed upon terms, but they refused.

112.    The Defendants' acceptance of Plaintiff's hard work and efforts and refusal to compensate for the same is inequitable and unconscionable.

113.    As a result of Defendants' acceptance of these benefits, they have been unjustly enriched.

114.    As a result of Defendants' conduct, Plaintiffs have been and continue to be harmed.

115.    Defendants acted knowingly and purposefully with no intention of compensating Plaintiff.

116.    Instead, Defendants made material misrepresentations on promised compensation—on which Plaintiff justifiably relied—to induce Plaintiff to continue to work on the Patreon.

117.    To the extent that Mr. Hoffman acted on behalf of GCW, he was utilizing the corporate form to perpetrate a fraud on Plaintiff, and the same should be disregarded.

118.    Defendants' conduct as alleged herein was reckless, knowing, intentional, and purposeful.

119.    Defendants' conduct was extreme, outrageous, and intolerable in a civilized community, justifying the imposition of punitive damages.

120.    Defendants are and have been aware of the exact amount due to Plaintiff as 20% of the revenue generated from the Patreon and have baselessly withheld the same. Accordingly, an award of pre-judgment interest and post-judgment interest is warranted.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants in an amount exceeding $150,000.00, plus costs, expenses, punitive damages, pre-judgment interest, post-judgment interest, and any such other relief this Court deems equitable and just.

<u>**COUNT IV**</u>
<u>**DECLARATORY RELIEF**</u>
<u>**PLAINTIFF v. ALL DEFENDANTS**</u>

121.    Plaintiff hereby incorporates by reference all paragraphs as though set forth fully at length herein.

122.    As set detailed above, the parties agreed that Plaintiff would be entitled to 20% of the revenue generated from the Patreon in exchange for his contributions towards the Patreon.

16

123.    In 2022, Defendants abruptly shut Plaintiff out of the Patreon, without compensation or payment of fair market value for his interests in the same.

124.    Accordingly, Plaintiff seeks that this Court hold that he is an equitable owner of 20% of the Patreon and that he is due 20% of the revenue from the Patreon until Defendants either pay an agreeable and fair market value for the same, or until the Patreon no longer has subscribers.

125.    To that end, Plaintiff should be provided with access to and regular records from the Patreon so that he may determine the correct amounts that he is due on a monthly basis.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants declaring that Plaintiff is a rightful owner of twenty percent (20%) of the Patreon, that he is due 20% of the revenue generated from the Patreon while it continues to have subscribers, and that he is entitled to continued and unfettered access to the Patreon data to determine the subscribers and revenue generated therefrom together with any such other relief this Court deems equitable and just.

<u>**COUNT V**</u>
<u>**DEFAMATION**</u>
<u>**PLAINTIFF v. ALL DEFENDANTS**</u>

126.    Plaintiff hereby incorporates by reference all paragraphs as though set forth fully at length herein.

127.    Plaintiff is a public figure within the wrestling community. Accordingly, Defendants' conduct is evaluated based on the actual malice standard.

128.    The defamatory statements about Plaintiff were made on the podcast, published and disseminated to all of the podcast's listeners and were received by the wrestling community as a whole.

129.    The defamatory statements were also made by Mr. Hoffman personally.

130.    The statements are defamatory for the following reasons, among others:

a.    they are objectively false, and Defendants knew they were false when they

17

were made;

b.  they ascribe to Plaintiff behaviors that are improper and impugn his integrity and blacken his personal and professional reputation;

c.  they expose Plaintiff to contempt, or ridicule, and injure him in his business and/or profession; and

d.  They lower Plaintiff in the estimation of the recipients of the statements and deter third persons including potential employers and/or co-workers from associating with and/or engaging him with employment in any capacity.

e.  They falsely portray Plaintiff as under contract with GCW which harms Plaintiff's ability to seek employment within the wrestling community.

131.  Any and all persons who have read, heard, or will read or hear the above Defamatory Statements understood, and will understand, the same as having a defamatory meaning.

132.  Any and all persons who have learned, or will learn, about the above Defamatory Statements from another, understood, and will understand, the same as having defamatory meaning.

133.  Any and all persons who have read or heard or will read or hear the above Defamatory Statements will understand that the same applies to Plaintiff.

134.  Any and all persons who have learned, or will learn, about the above Defamatory Statements from another understood, and will understand, that the same applies to Plaintiff.

135.  Defendants knew the statements made to be false and did not issue any retractions of the same.

136.  Defendants made the statements with actual malice and reckless disregard for the truth or falsity of the statements.

137.    As a direct and proximate result of the delivery and publication of the statements, Plaintiff has suffered injury, including, but not limited to:

a.    Having ascribed to his conduct, character, or a condition that adversely reflects upon, and has and will adversely reflect upon, his fitness and/or perceived fitness for the proper conduct of his work in any business;

b.    Having ascribed to him acts that are improper and impugn his integrity and blacken his reputation;

c.    Exposing him to contempt, or ridicule, and injuring him in his business and/or profession;

d.    Diminishing him in the estimation of the recipients of the statements and deterring persons from associating or doing business with him; and

e.    Causing him to lose credibility within the community.

138.    As set forth above, Defendants' conduct was outrageous in character and went beyond all possible bounds of decency, justifying an award of punitive damages.

139.    As set forth above, Defendants' conduct was reckless, wanton, willful, intentional, and/or knowing, justifying an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgments in his favor and against Defendants in an amount exceeding $150,000.00, plus costs, expenses, punitive damages, pre-judgment interest, post-judgment interest, and any such other relief this Court deems equitable and just.

<u>**COUNT VI**</u>
<u>**FALSE LIGHT INVASION OF PRIVACY**</u>
<u>**PLAINTIFF v. ALL DEFENDANTS**</u>

140.    Plaintiff hereby incorporates by reference all paragraphs as though set forth fully at length herein.

141.    Defendants knowingly, intentionally, and maliciously published false, defamatory

statements insinuating that Plaintiff was under contract with GCW, thereby limiting any potential employment he could have secured in the professional wrestling community after GCW baselessly terminated its affiliation with him.

142.    GCW continued to use Plaintiff's image on the Patreon website, further falsely insinuating that Plaintiff was associated with GCW.

143.    After making these statements, Defendants then made statements regarding Plaintiff's work ethics while at GCW and implied that Plaintiff's anger arose from a Japan trip he didn't get to go on with GCW.

144.    As set forth more fully above, Defendants had knowledge of the falsity or reckless disregard for the truth of the publicized statements described above and the false light in which they placed Plaintiff.

145.    Defendants published their false statements with reckless disregard for the truth.

146.    Plaintiff was in fact placed in a false light that would be highly offensive to a reasonable person as the direct and proximate result of the aforementioned statements.

147.    As a direct and proximate result of the false light invasion of his privacy by Defendants, Plaintiff has suffered and will continue to suffer damages.

148.    As set forth above, Defendants' conduct was outrageous in character and went beyond all possible bounds of decency, justifying an award of punitive damages.

149.    As set forth above, Defendants' conduct was reckless, wanton, willful, intentional, and/or knowing, justifying an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgments in his favor and against Defendants in an amount exceeding $150,000.00, plus costs, expenses, punitive damages, pre-judgment interest, post-judgment interest, and any such other relief this Court deems equitable and just.

**COUNT VII**
**REQUEST FOR ACCOUNTING**
**PLAINTIFF v. ALL DEFENDANTS**

150.    Plaintiff hereby incorporates by reference all paragraphs as though set forth fully at length herein.

151.    As set forth more fully above, Defendants agreed that Plaintiff would receive twenty percent (20%) of the Patreon's revenue.

152.    As set forth more fully above, Defendants failed to pay Plaintiff the agreed upon amount and in fact, did not pay him at all for the majority of his time with the Patreon or after baselessly excluding him therefrom.

153.    As described more fully above, Plaintiff has been locked out of the Patreon's data, reporting, and finances since approximately October of 2022.

154.    Defendants have failed to provide Plaintiff with access to financial documents which would determine how much Plaintiff is actually owed from the Patreon.

155.    Plaintiff has legitimate concerns, based on Defendants' failure to pay Plaintiff the agreed upon 20%, that Defendants intend to conceal the revenue of the Patreon for each month Plaintiff is seeking payment.

156.    As detailed above, the Patreon continues to have subscribers and continues to generate revenue therefrom.

157.    Further, as detailed above, the revenue generated from Patreon—including Plaintiff's twenty percent (20%)—was used by GCW during the COVID closures (and probably thereafter) to generate profits for GCW.

158.    However, Plaintiff did not receive any accounting or benefit therefrom.

159.    As detailed above, Plaintiff believes that he is entitled to discover the revenue and

profitability of both the Patreon and GCW's use of his 20% of the revenue that was never paid to him—but used instead to generate additional revenue for GCW, so that he may obtain a portion of the profits generated therewith.

160.   Consequently, Plaintiff is entitled to an equitable accounting of both the Patreon and GCW beginning in May of 2020 and continuing until the date of the Court's Order ordering the same.

**WHEREFORE**, Plaintiff requests that this Court order the equitable accounting of GCW's financial documents as it relates to the Patreon beginning in May of 2020 and continuing until the date of the Court's Order.

Respectfully submitted,

Dated: November 21, 2024

By: _____
Anton Kaminsky, Esquire
KAMINSKY LAW, LLC
NJ Atty. ID No. 211632016
207 Buck Road, Suite 2
Southampton, PA 18966
Tel. (215) 876-0800
kaminsky.esq@gmail.com
*Attorney for Plaintiff*

# EXHIBIT "A"

**Brett Lauderdale**
Active now

🔍 patreon percentage                                                                                      7 results   ⌃ ⌄   Close

If half the maybe were a yes it would be over 50

We have to create some content asap

Yeah man. When do you wanna record audio? And can you start pulling some behind the scenes photos? What else do we need for launch?

Another patron just joined for $12

Hell yeah

Also what do you want to work out for me? I can run the day to day on the patreon and etc

Or I can just do the shows with you. Whatever you want.

5/20/20, 6:25 PM

I can start writing some blurbs and stuff too if you want. Just give me the tone.

🥴

Whats a fair %?

10% 15% 20%?

How many patrons we gonna get?

If we can harness the gcw fandom and satisfy / exceed their expectations. I would hope we could beat AIW #'s in 90 days.

Some weeks we might wanna do little bonus podcasts and mini drops and bullshit sessions. Just to keep people engaged

50 patrons would garner about $500

I have another podcast to add to the shot caller and up

Oh yeah?

Alex colon and steven ayy wanna do a deathmatch gimmick

Okay. It's exclusive to our patreon ?

Yeah i think

Aa



**Brett Lauderdale**
Active now

🔍 patreon percentage                                                           7 results    ⌃ ⌄    Close

Yeah i think

Oohidian said patreon takes like 10%

We should make sure.  Exclusive I think gives it value.

Have you heard their show? is it bearable? (They did one together this week on colons other podcast)

Yea i think its fine

I would love to do 20 or 25 percent if possible and I can interact with people in the community (if desired), update content, prod you for Brett exclusives and can deal with the posting (I understand sometimes you will just randomly post stuff too and that's fine)

5/20/20, 7:02 PM

Ok

Lets start at 20

5/20/20, 7:19 PM

yeah?

22.5? 🙂

5/20/20, 7:37 PM

Lets start at 20 and see if its even worth continuing

Maybe it will be horrible and we quit

Check in on patreon group chat and read up

Yes sir.

Also, I'm happy for Steve ayy to do a show or whatever.  Please take care to not let him get over involved in the patreon besides contributing his show.  I don't want him suddenly hitting me up ten thousands times a day or him weighing in every day on how he thinks patreon should run

Do a show?  Awesome.

Aa

# EXHIBIT "B"

 **Kevin** <kevlarskills@yahoo.com>
To: Gamechangerwrestling

Thu, Oct 13, 2022 at 7:46 PM ☆

Hi Brett,

I just wanted to flag that locking me out of the Patreon that I co-founded with you prevents me from placing the metal card order I have been standing by (awaiting reimbursement) to place, and vendor is standing by to print, as well as mailing the signed postcards I was waiting on reimbursement to buy stamps to mail.

Just a heads up, as I know we agree it's important that the supporters should get their stuff..

Safre Travels,


KG

----- Forwarded Message -----
**From:** Kevin <kevlarskills@yahoo.com>
**To:** Gamechangerwrestling <gamechangerwrestling@yahoo.com>
**Sent:** Tuesday, October 11, 2022, 08:02:23 AM PDT
**Subject:** Re: settling up on Patreon and related costs September - December 2020

Hi Brett,

Wanted to follow up on my email from 9/27 regarding payment.

It's been 14 days of waiting for you be able schedule time to discuss this.  But each time I schedule a call you are not available / do not attend the call.

Can we please move forward?

Thanks,

Kevin Gill

Sent from Yahoo Mail for iPhone

On Tuesday, September 27, 2022, 11:49 AM, Kevin <kevlarskills@yahoo.com> wrote:

Hi Brett!

Just wanted to follow up on my email from 9/19/22

As mentioned today, I have to outlay reimbursable cash for new metal cards, stamps, and etc so getting this old invoice paid would help me tremendously personally and professionally.

Now that there are no shows scheduled for several days, can you take a minute to pay this? I sent a paypal invoice for ease of payment, but I also take CashApp, Venmo, Zelle and etc if thats easier/more liquid.

Much Thanks,
Kevin

----- Forwarded Message -----
**From:** Kevin <kevlarskills@yahoo.com>
**To:** Gamechangerwrestling <gamechangerwrestling@yahoo.com>
**Cc:** Kevin Gill <kevlarskills@yahoo.com>
**Sent:** Thursday, September 22, 2022, 10:28:08 AM PDT
**Subject:** Fw: settling up on Patreon and related costs September - December 2020

Hey Brett!

Just wanted to follow up on this, hoping we can get this paid today.

My Paypal is Info@dignifiedbastard.com but i also have Paypal and Venmo if thats easier @OGKevinGill

Time's Up.    Yahoo/Sent

**Kevin** <kevlarskills@yahoo.com>    Thu, Nov 10, 2022 at 4:44 AM
To: Gamechangerwrestling

Hi Brett, you made it a condition of payment that  you needed to talk to me before settling this invoice, and that you needed "a few days" to schedule a call with me.

You've had 6 weeks+ to schedule a call and have not showed up to nearly half a dozen scheduled calls.  I have made many efforts in good faith to schedule and reschedule calls with you during this six+ weeks with zero productive results.

The right thing to do would be to pay this invoice immediately, then schedule a call with me this week to discuss the balance owed and expense reimbursement for 2021 and 2022.

The wrong thing to do would be to continue your current course of non action.

Please choose wisely, because time is up.

Thank you.

Kevin Gill

Sent from Yahoo Mail for iPhone



# EXHIBIT "C"





# EXHIBIT "D"

bodyslam.net/2022/10/21/gcw-commentator-kevin-gill-signs-extension-with-promotion/

**WRESTLING NEWS**

## GCW Commentator Kevin Gill Signs Extension With Promotion

By Corey Brennan    — Last updated Oct 21, 2022

Share    Facebook    Twitter    Google+    +    0 Comments

Kevin Gill will remain the voice of Game Changer Wrestling.

Brett Lauderdale confirmed the news that Kevin Gill has signed an extension with the promotion. The extension will mean Gill will be on commentary for all 12 shows of the week while GCW takeover Los Angeles as well as preview and recap shows for the promotion.

---

**Logan** · Oct 20, 2022
@marth555 · Follow

KG not being involved with this is great

> **TheCollective2025** @thecollective2025
>
> The Collective returns in 2023 as we head to LA and takeover GCW's home at The Ukranian Cultural Center on Melrose Ave!
>
> Major news set to drop this weekend 👀
>
> Who will join The Collective in 2023????
>
> **GCW COLLECTIVE**
> MAR 30 - APR 1, 2023 · UKRAINIAN CULTURAL CENTER · LOS ANGELES

**brett lauderdale**
@Lauderdale11 · Follow

Actually he just signed an extension and will be providing solo commentary for all 12 shows in addition to a 3 hour and post collective "control center" preview and recap

10:39 PM · Oct 20, 2022

♥ 72      💬 Reply      🔗 Copy link

Read 8 replies

---

Gill has been commentating for the promotion since 2017 and has been on and off shows since as the voice of the promotion. There is currently no information on how long Gill's contract has been extended too but any further information will be posted to Bodyslam.net as the news breaks.

*Follow Corey at @CoreyBrennanBS on Twitter*

*If you enjoy Bodyslam's content, you can help donate to the site here. You can also visit our PWTees store and buy Bodyslam official merchandise here.*

*You can listen to all of Bodyslam's podcasts by following us on Spotify and subscribing to our YouTube Channel, or any of your favorite podcast platforms.🎧🎧🎧🎧🎧🎧🎧🎧*

Share    Facebook    Twitter    +    0 Comments

### RECENT POSTS

EXCLUSIVE: "Leading The Pack: An Interview With BOZILLA"

BJW Kitami Shopping Street Pro Wrestling Results (November 17th, 2024)

DDT Dramatic Dream Taiseikan Results (November 17th, 2024)

Basara Basara 262: Oji Ni Kitsune Results (November 17th, 2024)

Stipe Miocic Shares Emotional Message Following Retirement

### RECENT COMMENTS

💬 Cassidy Haynes on IMPACT Wrestling Review 9/15. Debuts and Matches Announced for Victory Road

💬 Gerard Ryan on IMPACT Wrestling Review 9/15. Debuts and Matches Announced for Victory Road

💬 CaneDewey on Former WWE Diva Sunny Says Candice LeRae Is Too Ugly For Main Roster

💬 Derek Giovi on Why Ronda Rousey Was Not At Last Night's Episode Of WWE Monday Night RAW

💬 WelshWatty on Potential Spoiler For John Cena vs. The Undertaker Match At WrestleMania 34